UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSI C. WEBB and LAURICE WEBB, husband and wife and natural parents of B.W.; and JESSI C. WEBB and LAURICE WEBB, representatives of the ESTATE OF B.W.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RICHLAND, a municipal corporation; DOUGLAS L. WOLD, an individual; and PETER L. WOLD and CINDY L. WOLD, husband and wife,<br><br>Defendants. | No. CV-10-5008-LRS<br><br>**ORDER DENYING DEFENDANT CITY OF RICHLAND'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** is Defendant City of Richland's Motion For Summary Judgment (ECF No. 31). The motion was heard with oral argument on June 23, 2011. George Fearing, Esq., argued for Defendant City of Richland. Richard E. Lewis, Esq., argued for Plaintiffs.

# I. BACKGROUND

On March 17, 2007, twelve year old B.W. visited the Horn Rapids Off-Road Vehicle (ORV) Park in Richland, Washington, a facility owned and operated by the City of Richland. B.W. rode his motorcycle on the park's motocross course.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    1**

The course included a flat, elevated plateau (the "table top"), followed by a double jump. The double jump concealed fallen riders from other riders using the course. After riding over the first jump of the double jump, B.W. crowned the peak of the second jump and fell on his landing. As B.W. was getting up from the ground, 19 year old Douglas L. Wold rode his motorcycle over the double jump, landed just behind B.W. and struck him. B.W. died from the injuries he suffered.

The accident occurred on a "non-event" day at the ORV Park. Practice and casual play use of the park, which was taking place on March 17, 2007, was free of charge. B.W. went to the park that day accompanied by his uncle, Jack Borley, and his cousin, C.B. (son of Jack Borley). Jack Borley's wife is the sister of B.W.'s father, Jessi C. Webb.

The parents of B.W., and his estate, have asserted wrongful death claims against Defendant City of Richland. Richland now seeks summary judgment on those claims, contending they are barred by the Washington Recreational Land Use Act, RCW 4.24.210, and in addition, that Richland owed no duty of care to B.W. on account of the implied primary assumption of the risk doctrine.

## II. DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    2

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**B. Recreational Land Use Act: Willful Or Wanton Misconduct**

"Washington's recreational use statutes were intended to modify the common law duty owed to public invitees so as to encourage landowners to open up their lands to public for recreational purposes." *Davis v. State*, 144 Wn.2d 612, 616, 30 P.3d 460 (2001).

RCW 4.24.210 reads in part:

> (1)[A]ny public or private landowners or others in lawful possession and control of any lands . . . who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to . . . pleasure driving of off-road vehicles . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.
>
> . . . .
>
> (4) Nothing in this section shall prevent the liability of a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    3**

> artificial latent condition for which warning signs have not been conspicuously posted.

This statute gives landowners immunity from liability unless: (1) a fee is charged; (2) the injury inflicted was intentional, or (3) the injury was caused by a known dangerous artificial latent condition and no warning signs were posted. *Davis*, 144 Wn.2d at 616.[1]  Richland contends that none of these exceptions apply and therefore, it is entitled to immunity from liability. Richland contends Plaintiffs' effort to characterize Richland's conduct as "wanton misconduct" causing the injuries to B.W. does not qualify as "intentional." Richland notes the statute makes no reference to "willful and wanton." Furthermore, Richland contends that even if conduct is deemed "intentional," that is distinct from "intentional" infliction of injuries, noting the statute refers to "unintentional injuries," not to "unintentional conduct." Therefore, even if it engaged in wanton conduct that is deemed "intentional," Richland contends it is still immune from liability.

Plaintiffs contend willful or wanton misconduct falls within the exception for intentional infliction of injury and that there is a genuine issue of material fact whether Richland's omissions amount to wanton misconduct.[2] Washington has a pattern civil jury instruction (WPI 14.01) which defines willful misconduct and

---

[1] There is no dispute a fee was not charged at the Hanford ORV Park. Plaintiffs do not argue that the injury was caused by a known dangerous artificial latent condition for which no warning signs were posted.

[2] There are four degrees of culpability within the civil context: negligence, gross negligence, wanton misconduct, and willful misconduct. *Yousoufian v. Office of Ron Sims*, 137 Wn.App. 69, 79-80, 151 P.3d 243 (2007). Willful or wanton conduct is not a separate cause of action, but a level of intent which negates certain defenses (i.e., contributory negligence) which might be available in an ordinary negligence action. *Rodriguez v. City of Moses Lake*, 158 Wn.App. 724, 730-31, 243 P.2d 552 (2011).

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    4**

wanton misconduct:

> Willful misconduct is the intentional doing of an act which one has a duty to refrain from doing or the intentional failure to do an act which one has a duty to do when he or she has actual knowledge of the peril that will be created and intentionally fails to avert injury or actually intends to cause harm.
>
> Wanton misconduct is the intentional doing of an act which one has a duty to refrain from doing or the intentional failure to do an act which one has a duty to do, in reckless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable person would know, or should know, that such conduct would, in high degree of probability, result in substantial harm to another.

The instruction cites to *Adkisson v. City of Seattle*, 42 Wn.2d 676, 684-685, 258 P.2d 461 (1953), and *Zellmer v. Zellmer*, 164 Wn.2d 147, 155 n.2, 188 P.3d 497 (2008). In *Zellmer*, the Washington Supreme Court summarized the distinction between willful and wanton misconduct it had previously explained in *Adkisson*: "'Willful' requires a showing of actual intent to harm, while 'wanton' **infers such intent** from reckless conduct." (Emphasis added). In *Adkisson*, the court explained that:

> Wanton misconduct is not negligence, since it involves intent rather than inadvertence, and is positive rather than negative. It is the intentional doing of an act, or intentional failure to do an act, in reckless disregard of the consequences, and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

42 Wn.2d at 687.

Willful misconduct is characterized by intent to injure. Wantonness implies indifference as to whether an act will injure another. *Adkisson*, 42 Wn.2d at 684, citing 38 Am.Jur. 693, Negligence, §48. Willful misconduct involves premeditated and deliberate harm, whereas wantonness does not. *Sorenson v. McDonald's Estate*, 78 Wn.2d 103, 109, 470 P.2d 206 (1970)("wanton misconduct contemplates intentional conduct . . . which is more reckless and dangerous than gross negligence, yet short of premeditated and deliberate harm").

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT-    5**

There is no doubt that willful misconduct involves intent to inflict injury and therefore, is not an "unintentional injury" for which immunity is provided by the Recreational Land Use Act. The same is true for wanton misconduct, however, and Richland fails in its attempt to distinguish intentional infliction of injury from intentional conduct resulting in injury. Wanton conduct is not only intentional conduct, it is conduct that is intended to cause harm. The intent to cause harm is "inferred" from the conduct. It is of no significance that the Recreational Land Use Act does not use the phrase "willful and wanton misconduct." Wanton conduct also involves intentional injury and is an exception to application of the Recreational Land Use Act. The case law bears this out.

In *Jones v. United States*, 693 F.2d 1299 (9th Cir. 1982), the plaintiff brought suit under the Federal Tort Claims Act (FTCA) for injuries received by her daughter in a snow-sliding accident on a slope in Olympic National Park in Washington. Washington' Recreational Land Use Act was at issue because under the FTCA, local law applies. The parties agreed that if the Recreational Land Use Act applied, the Government's liability was to be measured under Washington common law definitions of willful and wanton conduct as set forth in WPI 14.01 and in *Adkisson*. Plaintiff contended the Government's failure to place signs or ropes to guard against the "dangerous north slope" constituted willful and wanton misconduct because the breach was a conscious and deliberate decision by the Government, and the Government knew or should have known that someone would probably come in contact with the danger. The district court disagreed:

> The evidence established that the extent of the danger was not actually or reasonably known to the Government.[3] Its failure to put up signs and ropes was negligence which proximately contributed to the plaintiff's accident but it did not constitute "an intentional failure to do an act" nor

---

[3] "Actual" knowledge constituting willful misconduct and "reasonable" knowledge constituting wanton misconduct.

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    6**

>was it "in reckless disregard of the consequences."[4] The National Park Rangers were justifiably concerned that the placing of signs might mislead people into going to other areas. The only prior accident in the area had been after the snow season and was not such as would alert them to the fact that the plaintiff might be injured as she was. The slope itself was quite steep and the Rangers could well have thought that anyone looking at it and exercising reasonable caution would not attempt to use an inner tube on that slope.

693 F.2d at 1304-05. The Ninth Circuit affirmed, agreeing with the district court that while it was negligence on the part of the Government to not put up signs or ropes, its failure to do so did not rise to the status of willful and wanton conduct under Washington law. *Id*. at 1305. Therefore, the Government was immune from liability per the Recreational Land Use Act.

Richland contends *Riksem v. City of Seattle*, 47 Wn.App. 506, 736 P.2d 275 (1987), "suggests" that willful or wanton misconduct does not preclude immunity under the Recreational Land Use Act, quoting the following passage from that case:

>Finally, Riksem asserts the City's failure to post warning signs was willful and wanton, thus the City should be liable even if the statute [Recreational Land Use Act] applies. It is not clear how the City could be said to have intended Mr. Riksem's injury. The causal connection between the City's alleged **negligence** and the accident "is too attenuated . . . to impose liability." [Citation omitted].

*Id*. at 511-12. (Emphasis added). This passage actually recognizes that willful or wanton misconduct precludes immunity. In *Riksem*, the evidence was insufficient to raise a genuine issue of material fact that the City had engaged in any willful or wanton misconduct. At most, the City's omission amounted to negligence for which there was clearly immunity. The *Riksem* court arrived at essentially the same conclusion as the *Jones* court.

Plaintiffs have submitted sufficient evidence to raise a genuine issue of

---

[4] "Intentional failure to act" constituting willful misconduct and "in reckless disregard of the consequences" constituting "wanton" misconduct.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    7**

material fact that Richland's failure to post flaggers at blind jumps, and/or its failure to segregate riders by age/experience and bike size, amounts to wanton misconduct. Plaintiffs are prepared to offer expert testimony at trial that an owner/operator of a motocross course should provide flaggers in areas where there are blind jumps and/or should segregate riders by age/experience and bike size. See Declaration of Donald. E. Logan (ECF No. 72) and Deposition Testimony of Bill Uhl (Ex. K to ECF No. 70). Logan opines that "[s]imply unlocking the gates and letting people ride at their own risk is unconscionable" and "shows an utter disregard for the welfare of riders using the track." Plaintiffs offer evidence regarding the significant number of injuries (over 100) at the motocross course in the six year period prior to the accident involving B.W. which required a response from Richland Fire Department paramedics and/or ambulance personnel (Exs. A and B to ECF No. 73). At his deposition, Richland Fire Department Battalion Chief Curt Walsh testified that some of the injuries were serious, including head injuries, chest injuries, and long bone injuries. (ECF No. 70-1 at p. 51). The evidence in this case is not like in *Jones* where there had been only one prior accident that had occurred after the snow season "and was not such as would alert [park rangers] the fact that the plaintiff might be injured as she was." There is also deposition testimony from Laurel Strand, Richland's Recreation Program and Facility Manager, that she does not know why no one was monitoring the safety situation at the motocross park; she never conducted a safety review of the motocross park[5]; and that although she recommended additional safety signage at

---

[5] Cindy Johnson, Assistant City Manager and Parks and Recreation Director in 2007, and Stan Johnson, the city's Recreational Coordinator in 2007, acknowledge the city had a responsibility to conduct periodic safety reviews of its parks, but do not know if any were conducted regarding the Horn Rapids ORV Park. (ECF No. 70-1 at pp. 31 and 43). Stan Johnson reported to Laurel Strand and Laurel Strand, in turn, reported to Cindy Johnson. (ECF No. 70-1 at p. 42).

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    8**

Case 2:10-cv-05008-LRS    Document 107    Filed 07/05/11

the track, she did not know if this had ever been implemented. (ECF No. 70-1 at pp. 60-61; 62-63).

Because there is enough evidence to raise a genuine issue of material fact whether Richland engaged in wanton misconduct, for the time being pending a jury verdict that Richland did not engage in wanton misconduct, Richland is not entitled to immunity under the Recreational Land Use Act.

**C. Implied Primary Assumption Of The Risk: Owner/Operator**

Four varieties of assumption of risk operate in Washington: (1) express; (2) implied primary; (3) implied unreasonable; and (4) implied reasonable assumption of risk. The first two types, express and implied primary assumption of risk, arise when a plaintiff has consented to relieve the defendant of a duty- owed by the defendant to the plaintiff- regarding specific known risks. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010). Express and implied primary assumption of the risk share the same elements of proof in that the evidence must show the plaintiff had full subjective understanding of the presence and nature of the specific risk, and voluntarily chose to encounter that risk. *Id*. Implied primary assumption of risk is a complete bar to recovery for the risk assumed. *Id*.

Express and implied primary assumption of the risk in the sports participant context "is in reality the principle of no duty- hence no breach and no underlying cause of action." *Brown v. Stevens Pass, Inc.*, 97 Wn.App. 519, 523, 984 P.2d 448 (1999), quoting *Codd v. Stevens Pass, Inc.*, 45 Wn.App. 393, 402, 725 P.2d 1008 (1986). "A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport." *Id.*, quoting *Scott v. Pacific W. Mountain Resort*, 119 Wn.2d 484, 498, 834 P.2d 6 (1999). *Brown*, *Codd*, and *Scott* all involved application of the implied primary assumption of the risk doctrine to claims against a landowner/facility operator. In that specific context, "assumption of risk does not preclude a recovery for negligent acts which

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-     9**

unduly enhance such risks." *Brown*, 97 Wn.App. at 451, quoting *Scott*, 119 Wn.2d at 501. Nor, obviously, does assumption of the risk preclude recovery for willful or wanton misconduct which unduly enhances such risks.

An actionable negligence claim requires a plaintiff to establish: (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. *Parrilla v. King County*, 138 Wn.App. 427, 432, 157 P.3d 879 (2007).[6] The existence of a duty is a question of law for the court to be determined by reference to considerations of public policy. *Id*. Richland owed no duty of care to B.W. if it did not do anything to unduly enhance the risks already inherent in the sport of motocross. In other words, it would be entitled to the benefit of the implied primary assumption of risk doctrine.

As discussed, Plaintiffs have submitted sufficient evidence to raise a genuine issue of material fact whether Richland acted wantonly, thereby unduly enhancing the risks inherent in motocross. Therefore, it is improper to find as a matter of law that implied primary assumption of risk bars any recovery by Plaintiffs from the City of Richland. In *Rosencrans v. Dover Images, Ltd.*, 192 Cal.App.4th 1072, 122 Cal.Rptr.3d 22 (2011), the record included, as here, a declaration from a motocross safety expert who stated the common practice for motocross tracks is to have caution flaggers at their assigned posts at all times, whether the track is being used for racing or practicing. The *Rosencrans* court concluded this created a triable issue of fact as to whether the failure to provide a caution flagger constituted a departure from the ordinary standard of conduct. *Id*. at 1086-87. Richland moves to strike Uhl's testimony and Logan's declaration,

---

[6] These elements are the same even when it is alleged there was willful or wanton misconduct. It is simply necessary to establish a higher level of intent in order to prove willful or wanton misconduct.

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    10**

contending these individuals give opinions on matters that are within the court's province to decide.  Citing case law from California, *Peart v. Ferro*, 119 Cal.App.4th 60, 72, 13 Cal.Rptr.3d 885 (2004), Richland says application of the primary assumption of risk doctrine is a question of law that depends on the nature of the sport or activity in question and on the parties' general relationship to that activity.  While the existence of a duty is ultimately a question of law, it is necessary to resolve some factual issues before it can be determined whether there is a duty.  Specifically, there must be a factual determination as to what risks are inherent in motocross so as to allow a determination of what type of acts or omissions by an owner/operator of a motocross track would have the effect of unduly enhancing those risks.  If a jury finds Richland did not unduly enhance the risks inherent in motocross, it will be tantamount to a determination that Richland had no duty of care to B.W..  If, however, a jury finds Richland did unduly enhance those risks, that will be tantamount to a determination that Richland breached its duty to not unduly enhance those risks.  *Rosencrans*, 192 Cal.App.4th at 1084.[7]  Plaintiffs' proffered expert testimony is relevant to the factual issue of what risks are inherent in motocross and what acts or omissions by an owner/operator unduly enhance those risks.

If it is established that Richland engaged in wanton misconduct in not having flaggers and/or segregating riders, the question is no longer one of implied primary assumption of risk, but rather whether there was any contributory willful or wanton misconduct on the part of B.W. which should serve to diminish the amount of his recovery (as opposed to outright barring of any recovery under the

---

[7] Richland does not have to lessen risks already inherent in the sport of motocross.  It does, however, have a duty to not increase the risk (i.e., increase the risk of a rider being hit by another rider).

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-     11**

implied primary assumption of risk doctrine).[8]  While it is possible to assume risks so as to bar recovery, it is not possible to assume the willful or wanton misconduct of another so as to bar recovery.

In *Scott v. Pacific W. Mountain Resort*, the Washington Supreme Court found that although the minor in that case had assumed the risks inherent in the sport of skiing, he had not assumed the alleged negligence of the operator of the ski resort and the ski school.  See also *Snilsberg v. Lake Washington Club*, 614 N.W.2d 738 (Minn. App. 2000)(Plaintiff assumed inherent risk of diving head-first off dock into lake after dark, but primary assumption of risk did not preclude liability by club caretaker where evidence showed he may have enlarged the inherent risk of harm by providing alcohol to plaintiff).  In *Scott*, the court observed that the minor may nonetheless have been contributorily negligent "in the secondary sense he may have assumed some risk," noting "the doctrine of unreasonable assumption of risk has been subsumed in comparative negligence law." 119 Wn.2d at 503.  The court noted that "[a]ny such contributory negligence would reduce, rather than bar [the minor's] recovery," and this issue remained to be resolved at trial.  *Id*.  The court also noted the issue of contributory negligence for minors from 6 to 16 years of age is generally a question for the trier of fact and that Washington recognizes a special standard of care applicable to children in that "a child's conduct is measured by the conduct of a reasonably careful child of the same age, intelligence, maturity, training and experience."  *Id*.

Express and implied primary assumption of risk arise when a plaintiff has consented to relieve the defendant of a duty regarding specific known risks such that recovery from the defendant is barred.  Implied unreasonable and implied

---

[8] No Washington court has held that contributory negligence on the part of a plaintiff can diminish his recovery for willful or wanton misconduct on the part of a defendant.

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT-    12**

reasonable assumption of risk apportion a degree of fault to plaintiff and serve as damage-reducing factors. Recovery is not barred, but it is subject to reduction. *Id*. at 497-99. The *Scott* court quoted *Leyendecker v. Cousins*, 53 Wn.App. 769, 773-74, 770 P.2d 675 (1989), to explain implied reasonable and unreasonable assumption of risk (aka secondary assumption of risk), as contrasted with implied primary assumption of risk:

> [T]hose who choose to participate in sports or amusements consent to being injured by the risks inherent in the activity, and that such conduct constitutes "primary" assumption of risk, which continues as a complete bar to recovery even after the adoption of comparative negligence . . . .
>
> . . . .
>
> In contrast, implied reasonable and unreasonable assumption of risk arise where the plaintiff is aware of a risk that already has been created by the negligence of the defendant, yet chooses voluntarily to encounter it. In such a case, plaintiff's conduct is not truly consensual, but is a form of contributory negligence, in which the negligence consists of making the wrong choice and voluntarily encountering a known unreasonable risk.

*Id*. at 499.

Richland contends that Jack Borley, as B.W.'s guardian, assumed, on behalf of B.W., the risks associated with the absence of flaggers and the presence of riders of all ages, experience, and with different sized bikes, and therefore, there was an implied unreasonable assumption of risk on the part of B.W.. In other words, the argument is that Borley's awareness of the absence of flaggers and the fact riders were not segregated should be imputed to B.W. and any recovery by Plaintiffs should be diminished. It is well-established in Washington that the negligence (and therefore, the willful or wanton misconduct) of a parent cannot be imputed to a child. *Vioen v. Cluff*, 69 Wn.2d 306, 418 P.2d 430 (1966). Richland cites *Merrigan v. Epstein*, 112 Wn.2d 709, 773 P.2d 78 (1989), but that decision pertains to Washington's medical malpractice statute, RCW 4.16.350(3) which provides that for the purpose of determining when the applicable statute of

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    13**

limitation commences, "the knowledge of a custodial parent or guardian shall be imputed to a person under the age of eighteen years, and such imputed knowledge shall operate to bar the claim of the minor to the same extent that the claim of an adult would be barred under this section."

In *Scott v. Pacific W. Mountain Resort*, the Washington Supreme Court held that an exculpatory clause in a ski school application signed by a parent was not binding upon her minor child and did not bar the child's negligence action against the ski resort and ski school. According to the court, a rule to the contrary would violate public policy:

> Since a parent generally may not release a child's cause of action after injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury. In situations where parents are unwilling to or unable to provide for a seriously injured child, the child would have no recourse against a negligent party to acquire resources needed for care and this is true regardless of when relinquishment of the child's rights might occur.
>
> . . .
>
> We hold that to the extent a parent's release of a third party's liability for negligence purports to bar a child's own cause of action, it violates public policy and is unenforceable. However, an otherwise conspicuous and clear exculpatory clause can serve to bar the parents' cause of action based upon injury to their child.

119 Wn.2d at 494-95.

Based on *Scott*, there is little doubt the Washington Supreme Court would find it contrary to public policy to allow Jack Borley's knowledge to be imputed to B.W. so as to diminish any recovery by B.W.'s estate (assuming anything Borley did or failed to do amounted to contributory wanton misconduct). With regard to the cause of action asserted by B.W.'s parents, while it seems any contributory wanton misconduct on their part in knowingly subjecting their child to unreasonable risks should arguably diminish their recovery (as opposed to B.W.'s recovery via his estate), Richland does not cite to any evidence that B.W.'s parents, Jessi and Laurice Webb, knew anything about the Horn Rapids ORV, and

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    14

specifically that there were no flaggers and no segregation of riders. Richland cites to evidence in the record that Borley had such knowledge, but there is no evidence that he communicated this to the Webbs and that they nevertheless assented to B.W. riding the motocross course at Horn Rapids. The Webbs were not present at the course on the day of the accident. Indeed, Richland notes the Webbs believe Borley should have removed B.W. from the track under the circumstances. (ECF No. 36 at p. 26).

      For all of the reasons set forth above, summary judgment for Richland based on the implied primary assumption of the risk doctrine is inappropriate. If a jury finds there was wanton misconduct on the part of Richland, there will be no need to instruct the jury on implied primary assumption of the risk because that will no longer be an issue. By virtue of that finding, Richland will no longer be entitled to an implied primary assumption of the risk defense. If the jury finds there was no wanton misconduct on the part of Richland, the Recreational Land Use Act will immunize Richland, rendering moot any issue regarding implied primary assumption of the risk.

### III. CONCLUSION

      Richland's Motion For Summary Judgment (ECF No. 31) and its Motion To Strike Declaration Of Donald Logan and Deposition Testimony of Bill Uhl (ECF No. 92) are **DENIED**.

      There is a genuine issue of material fact whether Richland engaged in wanton misconduct. This precludes the court from now ruling as a matter of law that Richland is entitled to immunity under the Recreational Land Use Act, and it also precludes the court from now ruling as a matter of law that Richland is entitled to judgment on the basis of the implied primary assumption of the risk doctrine. The jury will need to be instructed that if it finds Richland did not engage in willful or wanton misconduct, it will have to enter a verdict for Richland

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT-    15**

because the Recreational Land Use Act will apply and provide Richland with immunity for "unintentional injuries" resulting from, at most, gross negligence by Richland. If the jury finds, however, that Richland engaged in willful or wanton misconduct, that will preclude Richland from relying on the implied primary assumption of the risk doctrine and will also preclude Richland from asserting a contributory negligence defense. *Liebhart v. Calahan*, 72 Wn.2d 620, 623, 434 P.2d 605 (1967)("One of the consequences visited by the law upon a person who engages in wilful and wanton misconduct resulting in injury, death, or property damage to another person is liability therefor even though the victim was guilty of negligence contributing to the injury").

**IT IS SO ORDERED**. The District Executive is directed to enter this order and forward copies of the same to counsel of record.

**DATED** this ___5th___ of July, 2011.

*s/Lonny R. Suko*
LONNY R. SUKO
United States District Judge

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    16**