UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JESSI C. WEBB and LAURICE                )       No. CV-10-5008-LRS
WEBB, husband and wife and natural       )
parents of B.W.; and JESSI C. WEBB       )       **ORDER GRANTING**
and LAURICE WEBB, representatives         )       **DEFENDANT DOUGLAS L.**
of the ESTATE OF B.W.,                    )       **WOLD'S MOTION FOR**
                                          )       **SUMMARY JUDGMENT**
                                          )
                                          )
                 Plaintiffs,              )
                                          )
        v.                                )
                                          )
CITY OF RICHLAND, a municipal             )
corporation; DOUGLAS L. WOLD, an          )
individual; and PETER L. WOLD and         )
CINDY L. WOLD, husband and wife,          )
                                          )
                                          )
                 Defendants.              )
                                          )

**BEFORE THE COURT** is Defendant Douglas L. Wold's Motion For

Summary Judgment (ECF No. 49).  The motion was heard with oral argument on

June 23, 2011.  Todd R. Startzel, Esq., argued for Defendant Douglas L. Wold.

Richard E. Lewis, Esq., argued for Plaintiffs.

**I. BACKGROUND**

        On March 17, 2007, twelve year old B.W. visited the Horn Rapids Off-Road

Vehicle (ORV) Park in Richland, Washington, a facility owned and operated by

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    1**

the City of Richland.  B.W. rode his motorcycle on the park's motocross course.  The course included a flat, elevated plateau (the "table top"), followed by a double jump.  The double jump concealed fallen riders from other riders using the course.  After riding over the first jump of the double jump, B.W. crowned the peak of the second jump and fell on his landing.  As B.W. was getting up from the ground, 19 year old Douglas L. Wold rode his motorcycle over the double jump, landed just behind B.W. and struck him.  B.W. died from the injuries he suffered.

The parents of B.W., and his estate, have asserted wrongful death claims against Defendant Wold.  Wold now seeks summary judgment on those claims, contending that as a coparticipant in the same sport as B.W., he owed no duty of care to B.W. on account of the implied primary assumption of the risk doctrine.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  The party opposing

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    2**

summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

## B. Implied Primary Assumption Of The Risk: Coparticipants

Four varieties of assumption of risk operate in Washington: (1) express; (2) implied primary; (3) implied unreasonable; and (4) implied reasonable assumption of risk. The first two types, express and implied primary assumption of risk, arise when a plaintiff has consented to relieve the defendant of a duty- owed by the defendant to the plaintiff- regarding specific known risks. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010). Implied primary assumption of risk is a complete bar to recovery for the risk assumed. *Id*.

Assumption of the risk in the sports participant context "is in reality the principle of no duty- hence no breach and no underlying cause of action." *Brown v. Stevens Pass, Inc.*, 97 Wn.App. 519, 523, 984 P.2d 448 (1999), quoting *Codd v. Stevens Pass, Inc.*, 45 Wn.App. 393, 402, 725 P.2d 1008 (1986). "A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport." *Id.*, quoting *Scott v. Pacific W. Mountain Resort*, 119 Wn.2d 484, 498, 834 P.2d 6 (1999). *Brown*, *Codd*, and *Scott* all involved application of the implied primary assumption of the risk doctrine to claims against a landowner/facility operator. In that specific context, "assumption of risk does not preclude a recovery for **negligent** acts which unduly enhance such

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT- 3**

1  risks." *Brown*, 97 Wn.App. at 451, quoting *Scott*, 119 Wn.2d at 501.  (Emphasis

2  added).  Washington has not addressed the duty of a coparticipant to another

3  coparticipant under the implied primary assumption of the risk doctrine.  Other

4  jurisdictions, however, have done so, notably California.

5      In a very recent decision, *Rosencrans v. Dover Images, Ltd.*, 192

6  Cal.App.4th 1072, 122 Cal.Rptr.3d 22 (2011), the California Court of Appeals

7  (Fourth District, Division 2) discussed the particular status of a defendant and how

8  that impacts the implied primary assumption of the risk analysis.  *Rosencrans*

9  involves very similar facts to the case at bar, although the individual who was

10  injured in that case was 38 years old.  This individual was riding his motorcycle on

11  a motocross track.  He went "up a ramp for a jump and fell, landing on the

12  downslope of the ramp, which placed him outside the view of the other riders."

13  After he stood up and picked up his motorcycle, he was struck in rapid succession

14  by two other motorcyclists who took the same jump and landed on the downslope.

15  Plaintiffs (the motorcycle rider and his wife) brought suit against the motocross

16  track operator.

17      The *Rosencrans* court noted that an owner/operator of a sports facility has a

18  duty to provide a reasonably safe course or track and this duty requires the owner

19  or operator to minimize the risks without altering the nature of the sport.  122 Cal.

20  Rptr. 3d at 32.  Thus:

21          In the sport of motocross, an owner/operator of a track has
           a duty to minimize the risk of a coparticipant crashing into
22          a second coparticipant who has fallen on the track.  Providing
           a warning system of some sort, such as caution flaggers to
23          alert riders of a fallen participant, would assist in minimizing
           the risk of riders colliding with one another.  If a rider
24          received adequate warning of a fallen rider on the track, then
           the rider could change his or her course to avoid the fallen
25          rider.  Further, providing a warning system, such as caution
           flaggers, would not alter the sport, because it would not
26          prevent riders from jumping and traveling at high speeds,
           rather it would provide riders with information so that they
27          could alter their course as necessary.  In sum, we conclude
           that the owner/operator of a motocross track has a duty to
28          provide a warning system, such as caution flaggers, to alert

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT- 4**

other riders of a fallen participant on the track.
*Id*. at 32-33.

Washington courts agree the duty of an owner/operator is to minimize the risks without altering the nature of the sport. A participant assumes the risks which are inherent in the nature of the sport and it is the duty of the owner/operator to not increase the risks to a participant over and above those inherent in the sport. *Scott*, 119 Wn.2d at 501-02. "[P]rimary assumption of the risk in a sports setting does not include the failure of the operator to provide reasonably safe facilities." *Id*. at 502. The undersigned believes Washington courts would also agree with California courts that the duty of coparticipants to each other in a sport is to not intentionally injure the other, or engage in conduct that is so reckless as to be totally outside the range of ordinary activity involved in the sport.

In *Rosencrans*, the defendant owner/operator argued the duty analysis should follow the duty analysis in *Distefano v. Forester*, 85 Cal.App.4th 1249, 102 Cal.Rptr.2d 813 (2001). The court rejected that argument, noting that *Distefano* concerned the duty owed by one participant to another participant: "The identity of the defendant is not meaningless - the duty owed by a coparticipant is not necessarily the same duty owed by the owner of the track." *Rosencrans*, 122 Cal.Rptr. at 34. In *Distefano*, the plaintiff and the defendant were engaged in the sport of "off-roading." The plaintiff rode his motorcycle on a narrow, one-lane dirt trail approaching the crest of a blind hill, while the defendant coparticipant, in a dune buggy, was ascending the opposite side of the same blind hill. The plaintiff and the defendant could not see one another as they approached the top of the hill and ultimately they collided. The defendant moved for summary judgment and it was granted by the trial court. On appeal, the plaintiff argued the defendant increased the risk inherent in the sport of off-roading, in part, by failing to have another person act as a spotter on top of the blind hill to warn off-roading vehicles

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT- 5**

traveling up the same blind hill in the opposite direction.  The appellate court
(Fourth District, Division 1) held as a matter of law that defendant did not owe a
duty to the plaintiff to use a spotter.  *Id*. at 1265-66.  The appellate court
summarized its holding as follows:

> [W]e hold that the sport of off-roading involves inherent risks
> that the participants in this recreational activity may be involved
> in inadvertent motor vehicle collisions and may suffer serious
> injury or death.  These inherent risks include the risk that
> coparticipants ascending a blind hill in motor vehicles from
> opposite directions might not be able to see one another in
> time to avoid a collision.  We also hold that a participant in the
> sport of off-roading owes a duty to other participants not to
> injure them intentionally or to engage in conduct that is so
> reckless as to be totally outside the range of ordinary activity
> involved in the sport, and a person who is injured while
> participating in such activity may not sue a coparticipant
> for negligence.

*Id*. at 1254.

A participant who is injured in a sporting activity may not sue another
participant for mere negligence.  *Id*. at 1264, citing *Knight v. Jewett*, 3 Cal.4th
296, 320, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992).[1]  *Knight* "stands for the
proposition that a participant who is injured in a sporting activity by a
coparticipant may sue that coparticipant only for intentional infliction of injury or
tortious behavior 'so reckless as to be totally outside the range of the ordinary
activity involved in the sport.'"  *Id*. at 1261, quoting *Knight*, 3 Cal.4th at 320-21.
"[C]onduct is totally outside the range of ordinary activity involved in the sport
(and thus any risks resulting from that conduct are not inherent to the sport) if the
prohibition of that conduct would neither deter vigorous participation in the sport
nor otherwise fundamentally alter the nature of the sport."  *Id*., quoting *Freeman v.
Hale*, 30 Cal.App.4th 1388, 1394, 1396, 36 Cal Rptr.2d 418 (1994).[2]  Put another

---

[1] *Knight* is a decision of the California Supreme Court.

[2] *Freeman* is a decision of the California Court of Appeals, Fourth District,

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT- 6**

way, conduct is within the range of ordinary activity involved in the sport and therefore, not reckless, if the prohibition of that conduct would deter vigorous participation in the sport or otherwise fundamentally alter the nature of the sport. The risks resulting from this type of conduct are inherent to the sport.

Plaintiffs were recently allowed to amend their complaint.  The complaint is to be  modified to include allegations that Wold operated his motorcycle in a "reckless" manner.  (Amended Complaint, Ex. 1 to ECF No. 86 at Paragraphs 6.1 to 6.6).[3]  Plaintiffs have not, however, raised a genuine issue of material fact that Wold was reckless in any manner, more specifically that he acted outside the range of normal activity involved in motocross.

Plaintiffs assert as follows:

> B.W., a 12-year-old boy, did not appreciate the danger of sharing the motocross track with riders of Mr. Wold's size and much larger motorcycles.  Mr. Wold should have known that Horn Rapids' failure to segregate riders by age required extra caution on his part.  Mr. Wold also noticed there were no flaggers which alerted him to a lack of necessary safety precautions.  Instead, of riding more slowly, Mr. Wold took a blind jump at full throttle.  These facts raise material issues that preclude summary judgment for Mr. Wold.

Taking blind jumps at high speed is an inherent part of motocross.  It is within the range of normal activity undertaken in order to successfully land jumps on a motocross course.  As the *Rosencrans* court put it:

> Motocross is a sport in which people ride motorcycles and perform jumps off of ramps, while in a setting filled with dust and other people on motorcycles.  Given the racetrack setting, speed involved, and jumping maneuvers, it follows that coparticipants will fall down, and while down, be struck by other riders whose views are obscured by the blind corners, blind ramps, dust, and/or other riders.

---

Division 2.

[3] In an order May 25, 2011 (ECF No. 99), the court granted the Motion To Amend Complaint, but Plaintiffs have yet to file their Amended Complaint.

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    7**

122 Cal.Rptr.3d at 32.

Failure of the Horn Rapids ORV Park to segregate riders by age and to provide flaggers did not create a duty on the part of Defendant Wold to take jumps more slowly or to avoid blind jumps altogether. Requiring riders to take jumps more slowly or to avoid blind jumps altogether would deter vigorous participation in motocross or otherwise fundamentally alter the nature of motocross. It was not Wold's duty to segregate the riders and/or provide flaggers. It was not Wold's duty to determine if it was safe for other riders to participate.

In Washington, express and implied primary assumption of the risk normally require a showing that the plaintiff had full subjective understanding of the presence and nature of the specific risk, and voluntarily chose to encounter that risk. *Gregoire v. City of Oak Harbor*, 170 Wn.2d at 636. As noted, however, Washington courts have not dealt with the issue of a coparticipant's duty of care to another coparticipant when they are engaged in a sporting activity together. All of the Washington cases regarding implied primary assumption of risk and sporting activity have addressed owner/operator liability.

In California, where there have been cases dealing with implied primary assumption of risk in the coparticipant liability context, there is guidance. In *Whelihan v. Espinoza*, 110 Cal.App.4th 1566, 2 Cal.Rptr.3d 883 (2003), the plaintiff was injured in a jet skiing accident. Her jet ski collided with the defendant's jet ski when plaintiff made a left turn in front of the defendant who was also on a jet ski. The accident happened two days after plaintiff and defendant had purchased jet skis. The trial court granted summary judgment in favor of the defendant based on the doctrine of primary assumption of risk and the appeals court affirmed, concluding the defendant owed no duty of ordinary care to plaintiff as they engaged in the sport of jet skiing together. The plaintiff suggested that because she was a novice jet skier, having a total of only six hours of actual operating time, a triable issue of material fact existed as to whether the doctrine of

primary assumption of risk applied.  The appeals court (Third District) disagreed:

> In determining the doctrine's applicability, we disregard "whether plaintiff subjectively knew of, and voluntarily chose to encounter the risk of defendant's conduct"; [i]nstead, our resolution of this issue turns on whether, in light of the nature of the sporting activity in which defendant and plaintiff were engaged, defendant's conduct breached a legal duty of care to plaintiff."

*Id*. at 888, quoting *Knight*, 3 Cal.4th at 315.  The appeals court noted:

> The common law legal principle of primary assumption of risk [Citation omitted] is founded upon a public policy judgment that imposing tort liability on a sports participant for his or her ordinary negligence is not appropriate because it would chill vigorous participation in the sport and, as a result, would have a "deleterious effect on the nature of the sport . . . as a whole." [Citation omitted].  For example, tort liability would have an "undesirable chilling effect" on vigorous, athletic activity, and "might well deter friends from voluntarily assisting one another in . . . potentially risky sports." [Citation omitted].

*Id*. at 889.

In *Peart v. Ferro*, 119 Cal.App.4th 60, 13 Cal.Rptr.3d 885 (2004), the First District California Court of Appeals (Division 3) had occasion to deal with a collision between Sea-Doos.  One of the Sea-Doos was operated by a 13 year old novice operating a Sea-Doo for the first time while an adult (Ferro) sat behind him to supervise.  The other Sea-Doo was operated by a 16 year old (Peart).  The court held Peart's negligence action was barred by the doctrine of primary assumption of risk.  Peart argued his case was distinguishable from the *Whelihan* case because unlike *Whelihan*, two minors were involved.  The court concluded that "to the extent they exist, the factual distinctions . . . do not affect the applicability of the doctrine of primary assumption of risk in this case," noting that the ages of the parties in *Whelihan* were never mentioned and that other California cases "involving comparably youth-oriented sports have either failed to mention the age of the participants at all [citations omitted], or essentially treated the ages of the coparticipants as irrelevant."  119 Cal.App.4th at 75.  The court noted that the fact Ferro (the adult defendant) was riding on the same Sea-Doo as Jason (13 year old

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-  9**

minor) in order to supervise his operation of the watercraft did not affect application of the assumption of the risk doctrine because the evidence showed that despite his supervisory role, Ferro was also a coparticipant in the activity with Peart and Jason. *Id*. at 76.

The undersigned believes Washington courts would follow California's lead insofar as application of the primary assumption of risk doctrine in the coparticipant liability context and therefore,  B.W.'s age, his subjective understanding of the risks of motocross, and whether he voluntarily chose to encounter those risks, are irrelevant.  Even were they relevant, however, the court would find there is no genuine issue of material fact, based on the evidence presented by Defendant Wold, that B.W. had  full subjective understanding of the presence and nature of the specific risk, that being inadvertent collisions with other riders, and voluntarily chose to encounter that risk.  This evidence includes the following:  B.W. rode motorcycles since he was 6 or 7; he watched the sport on television; he read magazines about motocross which discussed crashes and injuries; B.W. and his cousin watched You Tube videos and DVDs of motocross racing which showed crashes and injuries; B.W. and his cousin talked about crashes and the potential for getting hurt; B.W. had wrecked on prior occasions and had seen other riders, such as his cousin, wreck).

Defendant Wold did not create a risk over and above those inherent in the sport of motocross.  He took the double jump just as he was supposed to and just as everyone else did, well within the bounds of normal motocross conduct.  He clearly did not intentionally strike B.W. with his motorcycle.  Nor did he act recklessly.  Inadvertent collisions with other riders, perhaps the result of negligence at most, are an inherent risk of motocross.

## III.  CONCLUSION

Defendant Douglas L. Wold's Motion For Summary Judgment (ECF No.

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    10**

49) is **GRANTED**.  Pursuant to the implied primary assumption of risk doctrine, Wold did not owe a duty of care to B.W. and no recovery can be had against Wold.  Wold is awarded judgment on all claims asserted against him by Plaintiffs.

      **IT IS SO ORDERED**.  The District Executive is directed to enter this order and forward copies of the same to counsel of record.

      **DATED** this___5th___of July, 2011.

*s/Lonny R. Suko*

LONNY R. SUKO
United States District Judge

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    11**